

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STARSTONE SPECIALTY INSURANCE COMPANY f/k/a TORUS SPECIALTY INSURANCE COMPANY,** Harborside 5, 185 Hudson Street, Ste 2600 Jersey City, NJ 07311 **Plaintiff,** v. **ROMANO LANDSCAPING & DESIGN, INC.** 1816 Sterigere Street Norristown, Pennsylvania 19403 -and- **MEREDITH LOCKHART,** 103 Daisey Lane Malvern, Pennsylvania 19355 **Defendants.** | : : : : : : : : : : : : : : : : : : : : : : : | **CIVIL ACTION** **NO.:** **20   1444** FILED MAR 16 2020 NATE BARKMAN, Clerk By_____ Dep. Clerk |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, StarStone Specialty Insurance Company f/k/a Torus Specialty Insurance Company, by and through its undersigned counsel, Stewart Smith, hereby files this Complaint for Declaratory Relief and alleges as follows:

## PARTIES

1. Plaintiff StarStone Specialty Insurance Company f/k/a Torus Specialty Insurance Company ("StarStone") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at Harborside 5, 185 Hudson Street, Suite 2600, Jersey City, NJ 07311. StarStone is, therefore, a citizen of Delaware and New Jersey.

2. Defendant Romano Landscaping & Design, Inc. ("Romano") is a Pennsylvania corporation with its principal place of business at 1816 Sterigere Street, Norristown, Pennsylvania 19403. Romano is, therefore, a citizen of the Commonwealth of Pennsylvania.

3. Defendant Meredith Lockhart ("Lockhart") resides at 103 Daisey Lane, Malvern, Pennsylvania 19355. Lockhart is, therefore, a citizen of the Commonwealth of Pennsylvania. Lockhart's inclusion as a party-defendant in this matter is solely as an interested party.

## JURISDICTION AND VENUE

4. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) based upon the diversity of citizenship of the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under certain policies of insurance.

6. The amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000.00, exclusive of interest, costs and attorney's fees. Underlying this case are claims for permanent bodily injury, including fractured spinal rod(s)/hardware requiring spinal surgery and lengthy rehabilitation, incurred as a result of the alleged negligence of Romano, and others, when Lockhart purportedly slipped and fell on ice at a property Romano was allegedly responsible for clearing/treating snow and ice. StarStone is in receipt of correspondence from Lockhart's attorney in the underlying matter issuing a settlement demand for an amount that far exceeds this Court's jurisdictional minimum.

7. This Court has personal jurisdiction over Defendants because Romano conducts business in Pennsylvania and/or solicits business in Pennsylvania, and Lockhart resides in Pennsylvania.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(1) and (b) because all Defendants are citizens of the Commonwealth of Pennsylvania, and Romano is located in Norristown, Pennsylvania, and Lockhart resides in Malvern, Pennsylvania, both locations being within this district.

9. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because substantial acts giving rise to the claims asserted herein took place in this judicial district.

10. Pursuant to the requirements of 28 U.S.C. 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists between the parties such that an action for declaratory judgment is ripe and appropriate.

## FACTUAL BACKGROUND

11. This action arises from the demand for coverage by Romano under a policy of insurance issued by StarStone, as identified and described herein, for defense and indemnity in the underlying action of *Meredith Lockhart v. Sunoco, Inc., et al.*, filed in the Court of Common Pleas for Chester County, No. 2018-00832-TT ("the *Lockhart* Action"). A true and correct copy of the Complaint filed in the *Lockhart* Action is attached hereto as Exhibit "A".

12. In the *Lockhart* Action, Ms. Lockhart claims to have sustained a slip and fall accident on February 6, 2016 resulting in permanent injuries, including a fracture(s) to existing spinal rods/hardware requiring spinal surgery and lengthy rehabilitation. *See* Ex. "A".

13. Ms. Lockhart alleges that the accident and injuries were caused by the negligence of Romano, and others, in failing to adequately service the premises so that it was free from snow and ice. *Id*.

14. Preferred Contractors Insurance Company ("PCIC") issued a primary commercial general liability policy to Romano, No. PCIC5017, with a policy period of December 22, 2015 to

December 22, 2016 ("the PCIC Policy"). Upon information and belief, a true and correct copy of the PCIC Policy is attached hereto as Exhibit "B".

15. The PCIC Policy contains limits of liability of $1,000,000 per occurrence, subject to a $2,000,000 aggregate.

16. However, the PCIC Policy also contains Endorsement No. 96, titled "Slip and Fall Limitation" (the "Slip and Fall Endorsement").

17. The Slip and Fall Endorsement modifies the policy such that any slip-and-fall accidents are subject to an eroding sublimit of $35,000, as follows:

> **SLIP AND FALL LIMITATION**
>
> This endorsement modifies insurance provided under the following:
> COMMERCIAL LIABILITY COVERAGE
>
> Notwithstanding any other terms and conditions of this policy, **$35,000** only is the maximum amount we will pay for damages and claim expenses for any claim or "suit" for "bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to, or in any way related, in whole or in part, to any actual or alleged hazard or condition on or to the premises which results in a slip, trip, fall, tumble, collapse or other such descending act.
>
> The **$35,000** max sub limit identified above includes any and all defense fees and costs associated with the claim, as well as any contribution towards indemnity.
>
> "Defense fees and costs" means:
> 1. Fees charged by any lawyer designated by the Company;
> 2. All other reasonable fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a "claim" if incurred by the Company, and expenses and pre-judgment and post-judgment interest, paid or incurred by or on behalf of the "Insured";
> 3. Reasonable fees charged and reasonable expenses incurred by any lawyer designated by the "insured" with our prior express written consent.
>
> Except as set forth above, all of the terms, conditions and exclusions of this policy apply and remain in effect.

*See* Exhibit "B", Endorsement No. 96.

18. The PCIC Policy further contains a Buyback Endorsement Acknowledgment Form, Endorsement to Policy No. 82, for Snow Plow/Snow Removal Operations ("Snow Operations

4

Endorsement"), which provides limited coverage for accidents related to snow plow/snow removal operations subject to an eroding sublimit of $25,000, as follows:

\* \* \* \*

The following condition is hereby added to the policy and applies only to the snow plow/snow removal operations of the Named Insured, and does not affect coverage for other operations covered by the **Policy**:

**Snow Pile Run-Off Condition**
It is a condition of this **Policy** that any work performed by the Named Insured that involves snow plows, snow removal, or any activity in which a "snow pile" is created by the Named Insured shall meet the following conditions:
1. The "snow pile" shall be created in such a manner that the melted snow run-off drains into an irrigation or drainage location;
2. The Named Insured takes reasonably necessary steps to avoid icy conditions commonly known as "black ice" when the "snow pile" melts; and
3. The melted snow run-off is not accessible to pedestrian or vehicle traffic.

We will not extend any defense and/or coverage under this policy if the above-referenced conditions are not adhered to by the Named Insured.

For purposes of this condition and endorsement, "snow pile" shall be defined as follows:
"The location determined by the Named Insured for the placement of excess snow, ice, and/or debris that accumulates as a result of snow plow or any other snow removal operations conducted by the Named Insured."

The following term and definition is hereby added and applies only to this endorsement:

"Ongoing Operations" shall be further defined as the time period in which the Named Insured is performing the actual snow plow/snow removal work (i.e. during business hours) and shall not be defined as the length (number of days) of any given contract or agreement (oral, written, or otherwise) entered into by the Named Insured, or by the term of this **Policy**.

It is a condition of this endorsement that any claim reported under this policy has a maximum occurrence limit of $25,000 for any claim for bodily injury, property damage, or products and completed operations for Snow Plow/Snow Removal Operations for related damages with a maximum aggregate limit of $25,000.

The $25,000 maximum occurrence limit identified above includes any and all defense fees and costs associated with the claim, as well as any contribution towards indemnity.

\* \* \* \*

*See* Exhibit "B", Endorsement No. 82.

19. PCIC provided a defense to Romano in the *Lockhart* Action under the PCIC Policy, subject to a reservation of rights, up to the eroding sublimit of $35,000 as set forth in the Slip and Fall Endorsement.

20. On or about October 9, 2019, PCIC, on behalf of Romano, tendered Romano's defense and indemnity to StarStone.

21. StarStone issued Romano an Excess Liability Insurance Policy, No. 80516P150ALI, for the policy period of December 22, 2015 to December 22, 2016 with limits of $1,000,000 per occurrence and in the aggregate ("the StarStone Policy"). A true and correct copy of the StarStone Policy is attached hereto as Exhibit "C".

22. The Insuring Agreement of the StarStone Policy provides in relevant part, as follows:

> **SECTION I. – COVERAGE**
>
> **A.** This Policy shall provide the Insured with Excess Liability Insurance coverage in accordance with the same warranties, terms, conditions, exclusions and limitations as are contained, on the Inception Date of this Policy, in the **Followed Policy** set forth in Item 7. of the Declarations of this Policy, subject to the premium, limits of liability, retention, policy period, warranties, exclusions, limitations and any other terms and conditions of this Policy including any and all endorsements attached hereto, inconsistent with or supplementary to the **Followed Policy**.
>
> **B.** Notwithstanding **A.** above, in no event shall this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the **Followed Policy**:
>
> 1. Liberalization clause;
>
> 2. Cancellation, non-renewal or change in terms provisions;
>
> 3. State-specific No-fault, Uninsured Motorist or Underinsured Motorist law, or any similar law;
>
> 4. Crisis Management or Crisis Response endorsement; or
>
> 5. Sublimit of liability, unless coverage for such sublimit is specifically endorsed to this Policy.

*See* Exhibit "C", Section I. Coverage.

23. The StarStone Policy defines the "Followed Policy" as "the policy listed in Item 7. of the Declarations of this Policy." Item 7 of the Declarations identifies the "Followed Policy" as:

**ITEM 7.** FOLLOWED POLICY:
Company: Per Schedule Underlying Policies (See Endorsement No. 2)
Policy Number: SII3930F21440
Coverage: Following Form Excess Liability Insurance Policy
Policy Period: to 12/22/2016
Limits of Liability:
  $1,000,000   Per Occurrence, Per Claim or Per Loss
  $2,000,000   Aggregate, where Applicable

*See* Exhibit "C", Section V. Definitions, and Declarations.

24. Endorsement No. 2 to the StarStone Policy sets forth the Schedule of Underlying Insurance as follows:

**SCHEDULE OF UNDERLYING INSURANCE**

| COVERAGE | INSURER / POLICY PERIOD / POLICY NUMBER | APPLICABLE LIMITS |
|---|---|---|
| BUSINESS AUTOMOBILE LIABILITY | Agency Insurance Company of MD<br>08/31/2015 - 08/31/2016<br>CA 0002986 | BI & PD LIMIT<br>COMBINED SINGLE LIMIT<br>$1,000,000 |
| COMMERCIAL GENERAL LIABILITY COVERAGES A AND B | United Specialty<br>12/22/2015 - 12/22/2016<br>SII3930F21440 | $1,000,000 EACH OCCURRENCE<br>$2,000,000 OTHER AGGREGATE<br>$2,000,000 PRODUCTS COMPLETED OPERATIONS AGGREGATE<br>$1,000,000 PERSONAL AND ADVERTISING INJURY |

[ ] GENERAL AGGREGATE APPLIES PER LOCATION
[ ] GENERAL AGGREGATE APPLIES PER PROJECT

*The above Schedule applies to any renewals or replacements thereof.

*See* Exhibit "C", Endorsement No. 2.

25. Accordingly, pursuant to the StarStone Policy, StarStone follows the underlying policy, ***No. SII3930F21440***, issued by ***United Specialty*** ("United Specialty Policy"), not the PCIC Policy, No. PCIC5017.

26. The PCIC Policy provides primary commercial general liability coverage to Romano for its business operations in which "A-rated" insurance is not requested. For those business operations in which "A-rated" insurance is requested, and upon payment of an additional premium, a separate endorsement is issued to Romano identifying the primary commercial general liability insurance as the United Specialty Policy. *See* Ex. "B".

27. For the policy year at issue, Romano did not request, and therefore was not issued, an endorsement identifying the United Specialty Policy as its primary commercial general liability policy.

28. As such, the PCIC Policy was the only primary commercial general liability policy in effect for Romano for the policy year at issue and, specifically, covering the *Lockhart* Action.

29. Even if the StarStone Policy was deemed to follow the PCIC Policy, no coverage would be afforded because (1) neither the sublimit of the Slip and Fall Endorsement nor the sublimit of the Snow Operations Endorsement in the PCIC Policy were specifically endorsed to the StarStone Policy, and (2) the StarStone Policy provides that its limits of liability for covered claims only applies in excess of the $1,000,000 limits of liability of the underlying policy. *See* Exhibit "C", Section III, Retention.

## COUNT I

## DECLARATORY JUDGMENT

30. StarStone incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

31. Because the StarStone Policy sits excess of only the United Specialty Policy, and the PCIC Policy was the only primary commercial general liability policy in effect for Romano

8

during the policy year at issue, the StarStone Policy provides no coverage to Romano for the *Lockhart* Action.

32. As such, StarStone has no duty to defend or indemnify Romano in connection with the *Lockhart* Action.

33. Also, to the extent that the StarStone Policy is determined to follow the PCIC Policy, no coverage is afforded.

34. Coverage under the StarStone Policy is limited by Section I.(B)(5), which provides that "in no event will this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of…[a] Sublimit of liability, unless coverage for such sublimit is specifically endorsed to this Policy." *See* Exhibit "B", Section I. Coverage.

35. The accident at issue in the *Lockhart* Action constitutes a slip-and-fall accident within the meaning of the Slip and Fall Endorsement in the PCIC Policy.

36. The accident at issue in the *Lockhart* Action also involves snow removal operations with the meaning of the Snow Operations Endorsement in the PCIC Policy.

37. Accordingly, the *Lockhart* Action against Romano falls within the sublimits of liability under the Slip and Fall and Snow Operations Endorsements in the PCIC Policy.

38. Neither the sublimit in the Slip and Fall Endorsement nor the sublimit in the Snow Operations Endorsement are endorsed to the StarStone Policy.

39. Because the StarStone Policy will "in no event…provide coverage" with respect to any claim that is subject to a sublimit of liability on the followed policy, the StarStone Policy does not impose on StarStone a duty to defend or indemnify Romano for the bodily injury claims brought by Lockhart.

40. An actual, present, and justiciable controversy exists between StarStone and Romano warranting the entry of a declaratory judgment by this Court that the StarStone Policy does not provide coverage for the *Lockhart* Action.

**WHEREFORE,** Plaintiff StarStone Specialty Insurance Company f/k/a Torus Specialty Insurance Company requests this Court to enter judgment in its favor, declare that the StarStone Policy does not impose a duty to defend or indemnify Romano for the claims brought in the *Lockhart* Action, and grant any further relief the Court deems just and appropriate under the circumstances.

Dated: March 16, 2020

**STEWART SMITH**

By: /s/ Nancy Zangrilli

William F. Stewart Esq.
Attorney Bar No.: 59167
wstewart@stewartsmithlaw.com
Nancy E. Zangrilli, Esq.
Attorney Bar No.: 91150
nzangrilli@stewartsmithlaw.com
300 Four Falls Corporate Center, Suite 670
300 Conshohocken State Rd.
West Conshohocken, PA 19428
Telephone: (484) 534-8300
Facsimile: (484) 534-9470
*Attorneys for Plaintiff*